# Richmond

FRED LEE ATWELL v. WARREN H. WATSON.

WILLIAM H. GODWIN v. FRED LEE ATWELL.

December 2, 1963.

Record Nos. 5642, 5643.

Present, All the Justices.

The opinion states the case.

*Edward A. Marks, Jr. (Frank H. Pitchford; Sands, Anderson Marks & Clarke; Pitchford & Sarfan,* on brief), for plaintiff in error, Fred Lee Atwell, Record No. 5642; for defendant in error, Fred Lee Atwell, Record No. 5643.

*W. Worth Martin* and *Phillips M. Dowding (Martin & Dowding,* on brief), for defendant in error, Warren H. Watson, Record No. 5642.

*R. V. Richardson (James, Richardson & James,* on brief), for plaintiff in error, William H. Godwin, Record No. 5643.

WHITTLE, J., delivered the opinion of the court.

Fred Lee Atwell was injured in an automobile accident while riding as a guest passenger in a car owned and operated by William H. Godwin. The Godwin car was in collision with a truck operated by Warren H. Watson and owned by Benjamin H. Richardson. Atwell sued Godwin, Watson and Richardson, alleging gross negligence on the part of Godwin and simple negligence on the part of Watson and Richardson.

The case was tried on October 18, 1962. At the conclusion of plaintiff's evidence the court struck the evidence as to defendant Richardson on the ground that no agency had been proven, and he is no longer involved. The case proceeded to trial against Godwin and Watson. The jury returned a verdict in favor of defendant Watson and against defendant Godwin in the sum of $15,000.00.

Godwin moved to set aside the verdict in favor of Atwell on the grounds that it was contrary to the law and the evidence and was without evidence to support it, that the court erred in refusing to strike the evidence as to him and that the court erred in granting and refusing certain instructions.

Plaintiff Atwell also moved to set aside the verdict in favor of defendant Watson for the reason that it was contrary to the law and the evidence and without evidence to support it and for misdirection of the jury. Whereupon, the court overruled both motions and entered judgment on the verdicts.

To all intents and purposes, two cases are here involved. We granted Godwin a writ of error in Atwell's case against him (Record 5643) and we also granted Atwell a writ of error in his case against Watson (Record 5642).

## GODWIN v. ATWELL (RECORD 5643)

In stating the case most favorably to the prevailing party Atwell, it is disclosed that the accident happened at approximately 10:00 at night on Shell Road in the city of Hampton. Hurricane Donna was proceeding into the territory at the time. It was drizzling and the wind was blowing hard. Defendant Godwin in response to a call from plaintiff Atwell had picked Atwell up near his home in Hampton and had driven him to Newport News to call on a friend. He was driving him back to his home when the accident occurred. The fact that Atwell was a "guest without payment" as contemplated by Section 8-646.1 Va. Code 1950 is not disputed.

Shell Road runs east and west, is twenty feet wide and consists of two traffic lanes paved with black top. Courtland Street is an unpaved street, fourteen feet wide and only one-half block long. Courtland Street intersects the southerly side of Shell Road and does not extend across it. Godwin was driving east on Shell Road at what Atwell describes as "the normal speed" when the truck operated by Watson in traveling west on Shell Road turned left across the center of the road into the path of the Godwin car. He was attempting to turn south into Courtland Street. There was another car headed west on Shell Road ahead of the Watson truck when Watson began his turn.

Godwin testified that he saw several vehicles approaching, but that when he first saw the Watson truck it was just pulling out across the center of the road in front of him. At this time he was about one-half the length of the courtroom (28 feet) away from the truck. He immediately applied his brakes and his car skidded slightly to the left so that the right rear of his car struck the right rear of the truck. The right door of the car opened and Atwell was thrown out of the car into a ditch on the south side of the road, receiving the injuries complained of.

Atwell testified that there was a car ahead of the Watson truck; that the truck was "very close" to the car; that when the Watson truck turned out it was "maybe a distance of a car" ahead of the Godwin car; that he immediately said "Watch out" and that he believed that Godwin was already putting on brakes when he called the warning.

There was testimony by three colored boys, one of them being the son of defendant Watson, that they had been standing in the rain for half an hour, under a street light, at the corner of Maryland Avenue some 300 feet to the west of Courtland Street. They said that they saw the Watson truck turn into Shell Road from Chesterfield Road, proceed west on Shell Road to Courtland Street, come to a full stop and then turn left into Courtland Street. They all testified that the Godwin car passed them at an excessive speed.

While there are four assignments of error stressed by Godwin we are of the opinion that the case turns upon the assignment that the court failed to strike the evidence of the plaintiff as it regarded defendant Godwin.

Atwell testified that he was forty years old and had worked for a ship building company in Newport News for twenty years and that he was in full possession of his faculties at the time of the accident. On direct examination he testified that he had called Godwin and asked him to take him to Newport News. He described the trip in detail. When questioned as to the speed of the Godwin car, he stated "he was going the normal speed and I was looking at the—the trees blowing". His attorney asked him if he had warned Godwin about something and he replied "As we were approaching—I forget the name of the street, I said watch out. Here is this truck and he (Godwin) immediately throwed on brakes."

He further states that "it was done in a second. The car when he throwed on brakes went up (indicating) and when it come down, the next thing I knew I was rolling into a ditch. * * * "

On cross-examination Atwell stated he had ridden with Godwin a great number of times; that on the night of the accident the weather was nasty; that he had not been frightened by Godwin's driving and that Godwin was operating the car in a proper manner and at a normal speed. He stated that he had not looked at the speedometer, but that Godwin was not driving fast enough to make him look at it. He testified that there was a car ahead of Watson's truck and that they were "very close" together.

When questioned in regard to Godwin's reaction to his warning, he stated "to my belief he was putting on brakes when I said 'Look out' ". He was then asked "When that occurred how close was Mr. Godwin's automobile to the truck?" He replied "He was very close. Very close—I don't drive a car. I mean—I would say—maybe a distance of a car." In response to a question on cross-examination by

Watson's attorney, Atwell testified that he first saw the truck when it turned out from behind the car, and at that time Godwin's car was "maybe two lengths of a car" away from Watson's truck which "was coming catty-corner across the street." He testified that at the time the two vehicles came together the Godwin car was on its proper side of the road.

It will be seen from the above that the answers given by Atwell were definite and concise. At no time did he state that he did not know or did not remember the details of the accident. He answered all but two questions in a positive manner and his only doubt as to those was whether Godwin had applied the brakes before he was warned of the truck and whether Godwin's car was one or two car lengths away when Watson's truck turned across the center line in front of Godwin. It is evident from the record that Atwell knew what occurred on this occasion and did not hesitate to tell the court and the jury the details of the happening.

He described Godwin's speed as normal and the operation of the car as proper. He placed Godwin's vehicle within one or two car lengths of the truck at the time the truck began to turn left and stated that he believed that Godwin was already applying brakes when he warned him. His entire evidence fails to make a single allegation of negligence against Godwin. The tenor of his evidence indicates that he did not believe that Godwin was in any way at fault, but was, like himself, the victim of Watson's negligence.

Section 8-646.1 Va. Code 1950 provides inter alia "no person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation * * * shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator."

We have consistently held that where a litigant testifies unequivocally to facts within his knowledge and upon which his case turns, he is bound thereby and cannot rely upon other evidence in conflict with his own testimony to strengthen his case. See *Crew* v. *Nelson*, 188 Va. 108, 113, 49 S. E. 2d 326, 328.

Gross negligence means something more than lack of ordinary care. It is an utter disregard of prudence amounting to complete neglect

of the safety of the guest, heedless and reckless disregard of the rights of the guest, or conduct which shows an utter disregard of prudence amounting to complete neglect of the safety of another. *Reel v. Spencer*, 187 Va. 530, 535, 47 S. E. 2d 359, 361; *Sibley v. Slayton*, 193 Va. 470, 477, 69 S. E. 2d 466, 470.

It was incumbent upon the plaintiff Atwell to prove by a preponderance of the evidence how and why the accident occurred and that the reason therefor was the act of gross negligence on the part of his host Godwin. This he has utterly failed to do. *Hailey v. Johnson*, 201 Va. 775, 778, 113 S. E. 2d 664, 666. See also "Gross Negligence under the Virginia Guest Statute", 42 Va. L. Rev. 97, 45 Va. L. Rev. 1464.

The court erred in failing to strike Atwell's evidence against Godwin and entering final judgment for Godwin.

## ATWELL v. WATSON (RECORD 5642)

In this case the jury returned a verdict in favor of defendant Watson and the court refused to sustain plaintiff Atwell's motion to set the verdict aside. The errors assigned in this regard dealt with errors in instructions and the court's failure to sustain plaintiff's motion to set aside the verdict in favor of Watson.

Without repeating all of the facts in the case (those which are not disputed) and being aware of the fact that the verdict in Watson's favor has resolved conflicts in the evidence favorably to him we will detail the facts most favorable to his position.

Watson's contention is that he had stopped his pickup truck in the west bound lane of Shell Road as he was traveling west, where he awaited the passage of an oncoming east bound vehicle; that he looked westwardly and saw another east bound vehicle the other side of Maryland Avenue about one and one-half blocks to the west; that he thought he had time to complete his proposed turn and had given an arm signal for a left turn (the truck not being equipped with electric turn signals); that he had started his turn when the oncoming east bound vehicle (the Godwin car) was about 300 feet away; that he pulled off to his left at a speed of less than 5 miles per hour; that he did not look westwardly again until he was almost out of his turn and then saw the west bound vehicle 50 to 60 feet away coming at a rather high rate of speed; that he then speeded up a little and after all four of the wheels of his pickup truck had left the hard surface of Shell Road he felt a jar from the impact on the back

of his vehicle; that he applied his brakes and stopped about 5 feet south of the edge of the hard surface; that the Godwin car traveled 50 to 60 feet after impact eastwardly in the east bound lane; that the right rear of the Godwin vehicle which was sliding at an angle at the time struck the right rear corner of his truck; that in the process the right door of Godwin's car opened and Atwell was thrown out into the ditch; that Shell Road is 20 feet wide and Courtland Street into which he attempted to turn is 14 feet wide and unpaved.

Atwell contends that the fundamental error rests in the ruling by the trial court that either "unlawful speed" or "unreasonable speed" under the circumstances and traffic conditions prevailing at the time of the collision operated, as a matter of law, to forfeit any right of way Godwin had over the left turning Watson truck.

It is manifest from a reading of the instructions that the court was of the opinion that speed in excess of that which was reasonable under the circumstances and traffic conditions prevailing at the time was sufficient to work a forfeiture spelled out in Section 46.1-221 Va. Code 1950 as amended. In so holding the court completely disregarded the distinction between "unlawful speed" and "unreasonable speed". *Dugroo v. Garrett*, 203 Va. 918, 128 S. E. 2d 303.

Under the terms of Section 46.1-221 only an "unlawful speed" as distinguished from "unreasonable speed" works a forfeiture. The language of the Statute reads " * * * The driver of any vehicle traveling at an *unlawful speed* shall forfeit any right of way which he might otherwise have hereunder." Forfeiture of right of way because of speed does not occur in any case not arising under Section 46.1-221 involving the general right of way in favor of the driver on the right.

The instant case does not fall within the intendment of Section 46.1-221, but is controlled by a different section of the Code, i.e., Section 46.1-222 wherein no forfeiture provision appears. That section, insofar as material here, reads: "The driver of a vehicle, in an intersection and turning therein to the left across the line of travel of vehicles within or approaching the intersection shall yield the right of way to such other vehicles. * * * "

The words "shall forfeit any right of way which he might otherwise have hereunder" apply only to the Code section in which they appear (Section 46.1-221) and cannot be said to apply to any other sections conferring other and different types of right of way.

For example, the trial court granted over the exception of Atwell and Godwin Instruction D 2-9 offered by Watson as follows:

"The Court instructs the jury that a person who operates a vehicle at an unreasonable speed under the circumstances then existing or at a speed in excess of the legal speed limit, forfeits any right of way he might otherwise have had."

The effect of this instruction was to tell the jury that Watson was not required to yield to Godwin if Godwin was traveling either at an "unreasonable speed" or at a speed in excess of 25 miles per hour, the speed limit at the place of accident. Thus the instruction was erroneous.

The duty of Watson to yield did not depend upon the speed of the Godwin car. It depended upon whether the Godwin car was sufficiently far away from the point where the turn was to be made so that Watson could be said to have exercised reasonable care in undertaking to make the turn. In a factual situation such as existed here, Section 46.1-216 which requires the operator of a vehicle intending to make a left turn to first use reasonable care to see that he can do so in safety must be read and considered conjunctively with Section 46.1-222 which requires a left turning driver to yield the right of way to other vehicles within or approaching the point of turn.

The question of unreasonable or unlawful speed on the part of such approaching driver goes not to the forfeiture of right of way but rather goes to the question of whether the turning driver has exercised proper care under the circumstances so as to reasonably believe that he could complete the turn in safety. Under the facts and circumstances of this case the giving of Instruction D 2-9 was tantamount to telling the jury that Watson could make his left turn across in front of the Godwin car as a matter of law and not be negligent in so doing.

In addition to the court erroneously giving Instruction D 2-9 other instructions of similar import and tainted with like error were granted, following which the court granted over the objection of appellant Atwell Instruction D 2-11.[1]

At the time this instruction was offered Atwell objected thereto as follows:

[1] The Court instructs the jury that if you find from the evidence that the defendant Warren H. Watson, on the night in question, was driving a Ford pickup truck in a general westerly direction on Shell Road, in the City of Hampton, Virginia, in the nighttime, while the streets were wet, and that he was operating his

"The plaintiff objects to the granting of Instruction D 2-11 for it is a finding instruction. It does not state all of the evidence or pertinent facts necessary to find a verdict. It lends undue emphasis to one particular side of the case and takes from the jury some of the facts that they are required by their oaths to decide. For instance, about middle way of the Instruction, 'and was the distance of at least 300 to 350 feet west of the intersection of Courtland Street and Shell Road and appeared to be traveling at a reasonable speed and within the speed limit and there was sufficient time and distance existing for the defendant, Warren H. Watson, to have completed the left turn into Courtland Street in reasonable safety'. I think that takes the very issue in the case away from the jury. The Instruction as a a whole is confusing, argumentative and one-sided."

This objection to the instruction was well taken. The instruction permitted the jury to find that Watson gave a proper left turn signal, when on his own testimony he did not do so in the manner stated in the instruction; it gave Watson the right to assume that east bound traffic, particularly the Godwin car, was traveling within the speed limit; it completely ignored Watson's duty to yield the right of way to vehicles approaching east bound (Section 46.1-222); the instruction ignores Section 46.1-216; it ignores Watson's duty to keep a proper lookout for east bound vehicles, known to be approaching,

vehicle in a proper and lawful manner on his proper side of the said Shell Road, and that as he approached the intersection of Courtland Street he gave a hand signal to indicate a lefthand turn at least 50 feet prior to reaching the said intersection and then came to a complete stop on his proper side of the highway, waiting for eastbound traffic to clear; and if you further find that after one eastbound car passed, then the Corvair automobile, operated by the defendant, William H. Godwin, was traveling east on the said Shell Road and was then a little to the west of Maryland Avenue, which is one block to the west of Courtland Street, and was a distance of at least 300 to 350 feet west of the intersection of Courtland Street and Shell Road, and appeared to be traveling at a reasonable speed and within the speed limit, and that there was a sufficient time and distance existing for the defendant, Warren H. Watson, to have completed a left turn into Courtland Street in reasonable safety, if the said vehicle operated by William H. Godwin was proceeding within the speed limit, and that then the said Warren H. Watson began to turn left into the said Courtland Street; and that if you further find that a reasonable prudent person would have attempted to make the left turn at the time that the same was attempted by the defendant, Warren H. Watson; and that the vehicle operated by the defendant, William H. Godwin, was actually proceeding at a rate of speed in excess of the speed limit and at a rate of speed which was excessive under the circumstances then existing; and that the right rear corner of the Ford pickup truck, operated by the defendant Watson, was struck by the Godwin vehicle, then the defendant, Warren H. Watson, was not guilty of any negligence which proximately caused the said accident in question, and you must find your verdict for the defendant, Warren H. Watson.

and allows the jury to find this duty performed by one look when such vehicle was seen 300 feet or more west; it states as a matter of law that under the circumstances therein stated Watson was free from negligence.

As said by Mr. Justice Spratley in *Trucking Company* v. *Flood*, 203 Va. 934, 936, 937, 128 S. E. 2d 437, 439 "Moreover, the instruction states matters not pertinent to the issue and an hypothesis not supported by the law. It is inconsistent with and in conflict with the other instructions. It is deceptive, in that it is calculated to impress the jury that it would not have been given unless the court had approved it. It left the jury at liberty to decide the case according to the theory of the plaintiff rather than according to the principles of law given in other instructions, and makes it impossible for us to determine upon what theory or principle the verdict was founded.

"The general principle relating to instructions is well settled in Virginia. Their office is to fully and fairly inform the jury as to the law of the case applicable to the particular facts, and not to confuse them." 10 Michie's Jur., page 187 et seq.

"An instruction which is confusing, argumentative, long, and merely an attempt on plaintiff's part to have the court apparently agree with his theory of the case should be refused." *MacDonald* v. *Firth*, 202 Va. 900, 121 S. E. 2d 369.

For the foregoing reasons in the case of Fred Lee Atwell v. Warren H. Watson, Record No. 5642, the judgment of the trial court is reversed, the verdict of the jury set aside and the case is remanded for a new trial.

In the case of William H. Godwin v. Fred Lee Atwell, Record No. 5643, the judgment of the trial court is reversed and final judgment is here entered for the defendant.

Record No. 5642 *Reversed and remanded.*

Record No. 5643 *Reversed and final judgment.*