# Wytheville

ST. JOSEPH'S SOCIETY V. VIRGINIA TRUST COMPANY, ET AL.

June 10, 1940.

Record No. 2234.

Present, All the Justices.

504

The opinion states the case.

Robert Lewis Young and John W. Fussell, for the appellant.

George B. White, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The Virginia Trust Company and J. D. Carneal, Jr., executors of the estate of J. D. Carneal, deceased, instituted a suit in chancery in the Circuit Court of the city of Richmond on behalf of themselves and all other creditors of the estate of Joseph Hoffman, deceased, for the primary purpose of ascertaining the debts and liabilities of the estate of Joseph Hoffman, deceased, and their priorities, and to subject the assets of the estate (both real and personal) to the payment of the debts due by the said estate.

By decree entered on the 17th day of June, 1938, appellant was, on its petition duly filed, made a party to the suit and filed its answer, alleging that the estate of Joseph Hoffman was indebted to the St. Joseph's Society in the sum of $1,230, with interest upon said sum from May 2, 1935 (as evidenced by a certain negotiable note executed by Joseph W. Hoffman, executor of the estate of Joseph Hoffman, deceased, and signed "Joseph Hoffman Estate, Joseph W. Hoffman, Exec."), said note bearing the notation: This note

is given in renewal of note due Nov. 2, 1934, *Sign* by Jos. W. Hoffman, Exec. of Jos. Hoffman Estate."

The note in issue was a renewal of the note executed by Joseph Hoffman in favor of appellant, dated November 2, 1928, and payable one year after date. The record fails to disclose the consideration for this note.

Joseph Hoffman departed this life December 4, 1928, and Joseph H. Hoffman qualified as executor of his estate on December 12, 1928.

On the due date of the Joseph Hoffman note, to-wit: November 2, 1929, the executor executed a renewal note payable to appellant six months after date, and signed same "Joseph Hoffman Estate, Joseph W. Hoffman, Executor." At consecutive periods of six months thereafter, Hoffman, executor, executed renewal notes, the last note being the one sued upon.

The cause was referred by proper decree, to a commissioner in chancery with the direction to ascertain and report, among other things, all debts against the estate of Joseph Hoffman. At a hearing by the commissioner, appellant presented its note as a valid debt against the estate of the decedent. A plea of the statute of limitations as to this debt was thereupon interposed by one of the creditors and the commissioner, in his report to the court, held as follows.

"I report that this debt is barred by the Statute of Limitations. Section 4149(71)a of the Code of Virginia 1936, permits the personal representatives to renew debts, provided the time for final payment shall not extend beyond a period of two years from the qualification of the original personal representative. Said Joseph W. Hoffman qualified December 12th, 1928. Adding two years brings us to December 12th, 1930, the time limit for payment. Five years added to that brings us to December 12th, 1935, after which date the Statute of Limitations under the most liberal construction would be applicable.

"If the view is taken that independently of said Section 4149(71)a the will of the testator, Joseph Hoffman, which

is quoted in the Bill in this cause, authorized and empowered his Executor to make renewals of debts, we are confronted with Section 5813 of the Code of Virginia 1936, which has been construed to mean that 'no acknowledgment of or promise to pay or part payment on a debt of a decedent made by his personal representative, either before or after the debt is barred, shall operate to take it out of the Statute of Limitations.' See *Gwinn* v. *Farrier*, 159 Va. 183, 165 S. E. 647. * * * "

To the report of the commissioner, appellant filed the following exceptions:

"The Saint Joseph's Society, a creditor of the said Joseph Hoffman, deceased, to the amount of $1,230.00, as set forth on pages 3 to 5 of the Report of Commissioner John H. Guy filed in the Clerk's Office of this Honorable Court on the 17th day of October, 1938, excepts to the said report in so far as the same sustains the plea of the Statute of Limitations to the claim of the said Saint Joseph's Society for the reasons that, first, the will of the said Joseph Hoffman, deceased, expressly empowered the executor to renew the said notes; second, the executor had the power under the common law to renew the said notes, no one of the said series having ever been barred by the Statute of Limitations; third, section 4149 (71) a of the Code of Virginia is not applicable, and if applicable it is unconstitutional and void for the reason that it is contained in the Banking Code and therefore violates section 52 of the Constitution of Virginia; and fourth, for the reason that section 5813 of the Code of Virginia is not applicable inasmuch as the renewal notes relied upon were, of course, in writing."

Upon the hearing of the cause, the court entered a decree overruling the exceptions of appellant, hence this appeal.

The exceptions relied upon will be discussed in the order above set forth.

Under the provisions of the will of Joseph Hoffman, deceased, Joseph W. Hoffman acted in the dual capacity of executor and trustee. The provision of the will relied upon by appellant to support the first exception reads thus:

"Eighth: I give full power and discretion to the said Executors and to the said Trustees to rent and care for my real estate, to retain any investment which may be received or to sell the same, and from time to time to sell and convey my property, real and personal, and invest the proceeds therefrom in other property, real or personal, or both, and from time to time to resell and convey the property so purchased, and to change investments; and to do all things necessary or proper to make the division and distribution of the principal of said property as herein directed, whether by sale and conveyance and division of the proceeds of sale, or by division in kind, or otherwise as to them may appear judicious; and the said Executors or Trustees alone and not the purchaser, shall be required to see to the proper application of the purchase money."

In the petition of appellant this language is employed: "The testator directed his debts to be paid as soon as the same could be 'conveniently done'. It thus appears that Joseph W. Hoffman throughout the entire tenure of his office was acting as trustee rather than as executor, the trust provisions of the will being directed to remain in force until after the widow's death."

The fallacy of the argument is found in the apparent fact that the note evidencing the alleged debt of appellant was not executed by Joseph W. Hoffman as trustee, but as executor.

There is not a syllable in provision eight which confers upon the executor any authority to renew the initial note. The only powers conferred upon the trustee are those specifically set forth in the eighth provision of the will. Appellant will not be permitted to approbate and simultaneously to reprobate. The basis of the claim of appellant, as shown by its answer, is a note executed by the executor, not by the trustee. On that basis alone can appellant rest its right of recovery.

There is no merit in the first exception.

As the second exception is not adverted to either in

the petition or brief of appellant, it is assumed that this exception has been abandoned.

█ We concur in the view of appellant that section 4149(71)a of the Code is not applicable to the question in issue, for the reason that the record demonstrates the correctness of the conclusion of the commissioner, that the time for the final payment of the note of decedent had been extended beyond the two year period provided for in the statute.

The fourth exception, that "section 5813 of the Code is not applicable inasmuch as the renewal notes relied upon were, of course in writing," presents the determinative question in the case. That section provides:

"No acknowledgment or promise by any personal representative of a decedent, or by one or two or more joint contactors, shall charge the estate of such decedent, or charge any other of such contractors, in any case in which but for such acknowledgment or promise, the decedent's estate or another contractor could have been protected under section fifty-eight hundred and ten. (Code 1887, sec. 2923.)"

In *Gwinn* v. *Farrier*, 159 Va. 183, 165 S. E. 647, in an exhaustive review, Mr. Justice Epes has traced the history of this section from its incorporation as section 6, chapter 132 in the Code of 1849, to its incorporation in the present Code. With microscopic precision he has reviewed and distinguished all the Virginia cases involving a construction of this section, and has carefully analyzed the English and American decisions dealing even remotely with the power of a personal representative to revivify the written obligation of his decedent, whether said obligation was barred by the statute of limitations during the lifetime or after the decease of the obligor. To attempt a restatement of the history of the statute, or to attempt to add to the analysis of the decisions as set forth in the opinion, would be an act of supererogation upon our part.

While the question involved in the *Gwinn-Farrier Case* rested upon an oral promise, and therefore is not identical

with the present question, the principle of law involved is the same.

In reaching the conclusion that the debt asserted was barred by the statute of limitations, Mr. Justice Epes said:

"The policy of section 5813 in so far as it relates to promises by a personal representative is stated in the opinions in *Thompson* v. *Peter* [12 Wheat. 565, 6 L. Ed. 730] and *Fritz* v. *Thomas* [1 Whart. 66, 29 Am. Dec. 39], cited in the note of the revisors. It is that the estate shall be protected against promises made by a personal representative to pay debts of his decedent, because in most instances he has no personal knowledge of the transaction, and in many instances may make mistaken concessions or agreements which he ought not to make or would not make if he were fully informed with reference to the transaction.

"Our conclusion is that when section 5813 is construed in the light of its context, the decisions of the English and Virginia courts rendered before it was enacted, the prior statutes relating to the subject dealt with therein, the objects and purposes of those statutes, and the notes of the revisors of 1849 in the light of which the General Assembly has enacted and re-enacted it in its present form, the true construction thereof is this: No acknowledgment of, or promise to pay, or part payment on a debt of a decedent made by his personal representative, either before or after the debt is barred, shall operate to take it out of the statute of limitations.

"This is the conclusion which was reached by the West Virginia court in *Van Winkle* v. *Blackford*, 33 W. Va. 573, 585, 11 S. E. 26, and by the majority of that court in *Findley* v. *Cunningham*, 53 W. Va. [1] 15, 44 S. E. 472, in which cases it had under consideration the corresponding section of the West Virginia Code whose language is identically the same as the language of section 5813, Code Va. 1919. In speaking of the case of *Findley* v. *Cunningham, supra,* Judge Burks, in Burks' Pleading & Practice, page 406, says: "The majority opinion seems to be right. The language of section 5813 seems to prevent the personal representative from

making any promise or acknowledgment that will remove the bar or prevent the operation of the statute from affecting the debt, and such seems to have been the intention of the revisors of 1849."

In Burks' Pleading and Practice (3d Ed.) p. 379, the *Gwinn-Farrier Case* is cited and this statement of the controlling doctrine is made: "The language of section 5813 seems to prevent the personal representative from making any promise or acknowledgment that will remove the bar or prevent the operation of the statute from affecting the debt. Such seems to have been the intention of the revisors of 1849 and this view has finally been adopted by the Virginia court."

Counsel for appellant, however, suggest that the language employed in the *Gwinn-Farrier Case* is *obiter dicta.*

Since the opinion was handed down, there have been five sessions of the General Assembly, and section 5813 remains as it was when the opinion was announced. That construction which for a long period of time has been accepted by bench and bar as the true construction of a statute, becomes a canon of construction, unless some paramount reason is advanced for a change of the conclusion. Since no such reason is here apparent, we affirm the doctrine announced in *Gwinn* v. *Farrier, supra,* and conclude that the instant case is controlled by the doctrine therein announced.

For these reasons, we are of opinion that the decree appealed from is plainly right and it must be affirmed.

*Affirmed.*