# Richmond

## LILLY CAMPBELL V. JERRY THOMAS HANKINS.

March 4, 1977.

Record No. 760255.

Present, All the Justices.

*John W. Carter (Carter and Wilson,* on briefs), for plaintiff in error.

*Coleman B. Yeatts, Sr. (Yeatts, Overbey & Yeatts,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

Appellant Lilly Campbell filed a motion for judgment against appellee Jerry Hankins claiming damages for personal injuries sustained in an automobile accident. Appellee conceded liability, and the case was submitted to a jury which fixed damages at $12,250. Appellee moved to set aside the verdict as excessive. The trial court sustained the motion and, by order entered October 21, 1974, placed appellant on terms to accept $8000 and remit the balance of the verdict or submit to a new trial on the issue of damages. Appellant declined to accept judgment on that award, and a new trial on damages was held. The second jury awarded appellant a verdict of $6,736.70, and the trial court confirmed the

verdict by final judgment entered December 1, 1975. Appellant assigns error to entry of the October 21, 1974 order of remittitur and asks us to reverse the final order and enter final judgment here reinstating the first verdict.

The parties stipulated that appellant incurred hospital and medical expenses of $1,274.90. The medical testimony showed that appellant sustained "a fracture of a portion of the pelvis", "a fracture of the fifth rib", and "multiple contusions and abrasions"; that she was hospitalized for 23 days during which she "developed some basal pneumonia"; that her preexisting condition of "osteoporosis and osteoarthritis", a condition "common in the female after . . . the change of life", was aggravated by the trauma of her injuries; that the condition does not "respond very well to treatment"; and that appellant "is going to continue to have some discomfort related to her back, and she is going to have to learn to live with it", possibly "for the remainder of her life".

Appellant testified that, for "around six weeks", she "couldn't walk at all" without the aid of a "walker"; that she had experienced no pain in her back before the accident but "had trouble . . . every since" and had not "slept a good night's sleep" without getting "up and down taking something all during the night".

Appellant also called lay witnesses who testified that appellant is no longer able to perform her household duties and garden work as she did before she was injured. Appellee rested without offering any evidence.

■ When a trial court determines that damages awarded by a jury are inadequate or excessive, it may set aside the verdict and order a new trial. Code § 8-224 (Repl. Vol. 1957).[1] If it determines that a jury's verdict is excessive, it is expressly empowered to put the successful plaintiff on terms to consent to entry of a judgment for a reduced award or, alternatively, to submit to a new trial. Code § 8-350 (Repl. Vol. 1957).[2] If the

---

[1] "§ 8-224. **Power to grant a new trial; how often.**—In any civil case or proceeding, the court before which a trial by jury is had, may grant a new trial, unless it be otherwise specially provided. A new trial may be granted as well where the damages awarded are too small as where they are excessive. Not more than two new trials shall be granted to the same party in the same cause on the ground that the verdict is contrary to the evidence, either by the trial court or the appellate court, or both."

[2] "§ 8-350. **Allowing appeal when verdict reduced and accepted under protest.**—In any action at law in which the trial court shall require a plaintiff to remit a part of his

plaintiff grants unconditional consent, final judgment is entered on the reduced award. If the plaintiff consents under protest, judgment entered on the reduced award becomes a final judgment to which a writ of error may lie. Thus, the statute affords a protesting plaintiff the option of immediate appellate review of an intermediate ruling of the trial court, *i.e.*, the order of remittitur.

Although the plaintiff "may" avail himself of that option, he is not obliged to do so. The permissive language of the statute leaves him with the three choices posited by entry of the order of remittitur, *viz.*, the right to grant unconditional consent to entry of final judgment on the reduced award, the right to grant conditional consent and seek immediate appellate review of the intermediate order, or the right to withhold consent altogether and submit to a new trial.

Appellee argues that if, as here, a plaintiff makes the latter choice, he forfeits all right to appellate review of the order of remittitur; if the rule were otherwise, he says, a plaintiff could withhold consent indefinitely and pursue an infinite number of new trials seeking ever greater damages. Code § 8-350 and Code § 8-224, both approved by the 1950 session of the General Assembly, must be read together. Code § 8-224 fixes a limit on new trials, whether granted "by the trial court or the appellate court, or both." The rule appellee urges would avoid unnecessary delay and expense and promote the cause of judicial economy. As salutary as that may be, the rule finds no support in the express language of the statute, and we find nothing in legislative history or in the rules of construction which justifies the creation of such a rule by judicial inference.

We are of opinion, therefore, that, since appellant chose to withhold all consent to entry of a judgment for a reduced award and no such judgment was entered, the order of remittitur was an intermediate order subject to review upon appeal from the final judgment order entered December 1, 1975.

---

recovery, as ascertained by the verdict of a jury, or else submit to a new trial, such plaintiff may remit and accept judgment of the court thereon for the reduced sum under protest, but, notwithstanding such remittitur and acceptance, if under protest, the judgment of the court in requiring him to remit may be reviewed by the Supreme Court of Appeals upon a writ of error awarded the plaintiff as in other actions at law; and in any such case in which a writ of error is awarded the defendant, the judgment of the court in requiring such remittitur may be the subject of review by the Supreme Court of Appeals, regardless of the amount."

■ We consider now whether the trial court erred in sustaining appellee's motion.

"In determining whether a trial judge has abused the discretion vouchsafed to him by the statutes and the common law we must examine the grounds upon which he based his order of remittitur. '[T]he record must show the grounds relied on in support of such action, otherwise it cannot be upheld.' *Hoffman* v. *Shartle*, 113 Va. 262, 264, 74 S.E. 171, 172 (1912). Absent a statement of the grounds, we must assume that the trial judge simply disagreed with the jury's damage evaluation and arbitrarily substituted his opinion for theirs. In such case, entry of the order would clearly constitute an abuse of discretion." *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 911-12, 224 S.E.2d 323, 332 (1976).

Appellee's motion was "to set aside the verdict of the jury as being excessive and to put the plaintiff on terms". The order entered October 21, 1974 provided in part that "the Court having maturely considered the motion . . . is of opinion to and doth sustain said motion". The order does not state upon what grounds the trial judge based his opinion that the verdict was excessive.[3] We, therefore, examine the record to determine whether the trial judge was justified in his opinion.

"Where the attack upon . . . a verdict [in a personal injury case] is based upon its alleged excessiveness, if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision, the court is empowered and in fact obligated, to step in and correct the injustice. [Citations omitted]." *Edmiston* v. *Kupsenel*, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964).

Guided by the rule in *Edmiston*, and comparing the evidence of injuries and damages sustained by the plaintiff in *Murphy* v.

---

[3] See the grounds stated by the trial court in *Bassett Furniture* v. *McReynolds, supra,* 216 Va. at 912, 224 S.E.2d at 332-33, where we upheld the trial court's order of remittitur.

*Va. Car. Freight Lines*, 215 Va. 770, 213 S.E.2d 769 (1975) (where we reinstated a plaintiff's verdict for $25,000), with that in the case at bar, we are of opinion that the trial judge could not properly conclude that the verdict of the first jury was excessive, and we hold that he erred in entering the order of remittitur.

All proceedings subsequent to the first jury's verdict are annulled and set aside. Final judgment for the appellant in the amount of that verdict will be entered here.

*Reversed and final judgment.*

HARRISON, J., dissenting.

In *Smithey* v. *Refining Company*, 203 Va. 142, 145, 146, 147, 122 S.E.2d 872, 875, 876 (1961), speaking through Mr. Justice Carrico, we enunciated certain principles to be followed by a trial court in exercising the powers vested in it by Code § 8-350. There we said:

> "But this is not to say that the verdict of a jury is not subject to the control of the courts. A healthy administration of justice requires that, in a proper case, the courts must take action to correct what plainly appears to be an unfair verdict. This authority is an ancient and accepted part of the common law. . . .

> "In a case where the verdict of a jury is attacked on the ground that it is excessive, the rules controlling the actions of the court in relation thereto are clear and well defined. If the verdict merely appears to be large and more than the trial judge would have awarded had he been a member of the jury, it ought not to be disturbed, for to do so the judge must then do what he may not legally do, that is, substitute his judgment for that of the jury. [Citations omitted.]

> "But if it appears that the verdict is so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption or prejudice, or has misconceived or misunderstood the facts or the law, or if the award is so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision, then it becomes the plain duty of the judge,

acting within his legal authority, to correct the injustice. [Citations omitted.]

\* \* \* \* \*

"In other words, if the verdict is fairly reached, is sustained by the evidence, and there is no standard to measure the damages, it is not then excessive and cannot be disturbed. On the other hand, if the verdict is plainly excessive it necessarily follows that it is not supported by the evidence, and it may be corrected, in the exercise of sound judicial discretion, by putting the prevailing party on terms to accept a reduced amount or else submit to a new trial. [Citing authorities.]

"Each case must be judged on its own merits, according to its own peculiar facts and circumstances. What is fair in one case might be entirely inadequate or grossly excessive in another. If the size of the verdict bears no reasonable relation to the damages disclosed by the evidence, it is manifestly unfair. . . ."

We reiterated these principles in *National Cab* v. *Thompson*, 208 Va. 731, 160 S.E.2d 769 (1968), and more recently in *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976). Nothing that we said in *Murphy* v. *Va. Car. Freight Lines*, 215 Va. 770, 213 S.E.2d 769 (1975), was intended to overrule or modify *Smithey*.

In the instant case the trial judge was in the best position to determine the excessiveness of the $12,500 verdict returned by the first jury. He saw the witnesses and heard their testimony. More importantly, he saw, heard and observed the injured appellant, and knew the setting in which the verdict was returned. Liability was admitted, and the jury had only to fix the amount of damages.

Appellant's attending surgeon described her injuries as contusions, abrasions, a fracture of a portion of the pelvis and a fracture of the fifth rib. He testified that the pelvis was not displaced and that the treatment he prescribed was "bed rest for a period of time" and "supportive measures, vitamins". The doctor said that appellant recovered from the fractured pelvis. When asked if he treated the rib in any way he answered: "Not specifically — sedatives for discomfort." He said that by the

time the patient had recovered from the fractured pelvis her rib had healed.

While Mrs. Campbell was in the hospital, she developed "some basal pneumonia". X-rays were taken and revealed a bone condition described as osteoporosis which the doctor said "obviously had been present for some time". He said that the osteoporosis was not produced by the accident although it may have aggravated the symptoms.

Mrs. Campbell's period of bed rest in the hospital was from May 20, 1972 to June 11, 1972. However, a great deal of the testimony dealt not only with the osteoporosis but also with a second hospitalization she had from April 24, 1973 to April 30, 1973. This in no way concerned the injuries involved in the instant case. Her doctor testified that the April, 1973 hospitalization was for diagnostic purposes, for symptoms related to her gastrointestional tract which were different from those present as a result of the osteoporosis. X-rays taken in April, 1973, disclosed a hiatus hernia which the doctor said was not related to the accident at all. He also said that there were no significant changes as far as the osteoporosis was concerned.

With this background the trial judge found that the verdict of the first jury was excessive. Obviously he concluded that the size of the verdict was out of proportion to the injuries sustained and medical expenses incurred and could only have resulted from a misconception or misunderstanding by the jury of the seriousness of the plaintiff's injuries. A second jury found damages in the amount of $6,736.70, a verdict consistent with the judgment of the trial court.

In *Smithey* v. *Refining Company, supra,* we also said:

> "The law has wisely placed in the hands of the trial judge the power to exercise his sound discretion in supervising the verdicts of juries to prevent miscarriages of justice. The law intends that this power should be exercised, and that the judge should be more than a mere referee between the litigating parties. The ultimate test, in a case of this nature, is whether or not the discretion has been abused." 203 Va. at 148, 122 S.E.2d at 877.

And in *Bassett Furniture* v. *McReynolds, supra,* we added emphasis to the sentence, *"The ultimate test, in a case of this*

*nature, is whether or not the discretion has been abused.*" 216 Va. at 911, 224 S.E.2d at 332.

Finding no abuse of discretion by the trial court, I would affirm.